Merrill FERGUSON, Stephen W. Dils, Gail W. Dils, as Trustee for the Dils Trust, et al., Plaintiffs–Appellants,

v.

Richard ROBERTS and Roberts & Ellsworth, Ltd., Defendants–Appellees.

No. 92–2656.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1993.

Decided Dec. 8, 1993.

Lawrence R. Samuels, Jeffrey A. Berman, Jacquelyn F. Kidder, Patricia K. Smoots, Patrick J. Ahern, argued, Chicago, IL, for plaintiffs-appellants.

Barry L. Kroll, argued, Brigid E. Kennedy, David E. Morgans, Williams & Montgomery, Chicago, IL, for defendants-appellees.

Before POSNER, Chief Judge, CUDAHY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The plaintiffs brought this action under § 10(b) of the Securities Exchange Act of 1934 ("the Act"). The district court granted the defendants' motion for summary judgment. It held that the newly adopted one-year statute of limitations combined with the three-year statute of repose made the plaintiffs' claims time-barred. Because there was no just reason for delay, the district court entered final judgment pursuant to Federal Rule of Civil Procedure 54(b). The plaintiffs appealed. We now affirm.

I

BACKGROUND

A. *Facts*

The plaintiffs Merrill Ferguson, Stephen Dils, Gail Dils, and Steven Givot brought this action against the defendants Richard Lurie, James Jamieson, Land Acquisition Co., Richard Roberts, and Roberts & Ellsworth, Ltd. ("R & E"). The plaintiffs alleged that Lurie and Jamieson fraudulently represented the value of land in which the plaintiffs had invested through a limited partnership in Valley Two Limited Partnership ("Valley Two"). They sought relief on a variety of theories, including RICO, § 10(b) of the Act, Illinois securities fraud, consumer fraud and deceptive business practice, and breach of fiduciary duty. The plaintiffs also alleged that the defendant Roberts and his law firm, R & E, aided and abetted Lurie and Jamieson in their violation of Rule 10b–5, promulgated pursuant to § 10(b) of the Act, because Roberts drafted the sale agreement for the property and the limited partnership agreement at issue in this case. The factual prelude to this suit, as set forth in the complaint, follows.

Richard Lurie and James Jamieson formed a general partnership known as Land Acquisition Co., which was a general partner in a real estate limited partnership, Valley Two. In May and June 1984, Richard Lurie separately approached Merrill Ferguson, Steven Givot, and Stephen Dils and asked them if they would be interested in investing in real estate by way of a limited partnership interest in Valley Two. Lurie told Ferguson, Givot, and Steve Dils that Lurie had experience in real estate investments and was familiar with real estate in the Phoenix area. Lurie conveyed to the plaintiffs his belief that this land could be purchased for a bargain price and resold a short time later for a substantial profit. Based on these representations, Ferguson, Givot, and Steve Dils decided to invest in the partnership.

During these conversations, according to the plaintiffs, very few details were given. Lurie did not tell the plaintiffs the identity of the seller, the purchase price, the financing package, or that defendant Jamieson was a general partner of the seller. Nor were the plaintiffs apprised of other details of the transaction. Lurie did not inform the limited partners that the seller had acquired the property on the same day it was deeded to Valley Two or that the property had sold four months earlier for over a million dollars less than the price at which Valley Two purchased it. The plaintiffs also claim that they were not informed that additional cash contributions would be necessary, or that Lurie would receive $350,000 in fees out of capital contributions to Valley Two. The plaintiffs contend that, if they had known these facts, they would not have invested.

Also in 1984, at Lurie's request, Roberts drafted the Valley Two limited partnership agreement. He drafted the documents transferring property from Double J to Valley Two as well. To what extent Roberts knew the details of these transactions is disputed.

At the end of 1984, 1985, 1986, 1987, and 1988, Lurie sent each of the plaintiffs letters requesting additional cash contributions. In

each of these letters, Lurie did not disclose additional information about the original transaction or the investment. He also failed to inform the plaintiffs that 25% of the Valley Two property had been sold in February of 1985. He continued, instead, to assure the plaintiffs that the investment would be profitable.

The plaintiffs began to have serious concerns about their investments in December of 1987 when they received a fourth request for capital. However, Lurie continued to represent that the investments would yield a substantial profit. By early 1989, the plaintiffs were convinced they had been defrauded and filed their initial complaint on March 20, 1989. Jamieson was added as a defendant on November 16, 1989. After receiving answers to an initial discovery request, the plaintiffs discovered facts that led them to believe that Roberts may have aided and abetted the defendants in their securities fraud. Consequently, Roberts and R & E were added as defendants on January 18, 1990.

B. *District Court Proceedings*

In February 1991, the plaintiffs sought leave of the district court to file a third amended complaint. This complaint expanded the counts against Roberts and R & E from the initial aiding and abetting the violation of Rule 10b–5 to include conspiracy to defraud, common law fraud, violations of RICO, aiding and abetting to violate RICO, and conspiracy to violate RICO. The district court denied this motion. It noted that these additional counts undoubtedly would have required a great deal of additional discovery. Given the date set for close of discovery and the nearing trial date, the district court determined that the defendants would be prejudiced by allowing the plaintiffs to amend their complaint. It therefore denied the motion.

Later, these same defendants filed a motion for reconsideration of the district court's denial of their motion for summary judgment [1] in light of the Supreme Court's deci-

sion in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), which established a new statute of limitations for claims brought under § 10(b) of the Act. The district court granted the motion for reconsideration and entered summary judgment on behalf of the defendants Roberts and R & E. The district court held that *Lampf* required it to conclude, as a matter of law, that the plaintiffs' claims against Roberts and R & E were barred by the statute of limitations. This was especially true, noted the district court, because Roberts' involvement in the sale necessarily ended when the limited partnership agreement was filed in September 1984, well outside the three-year statute of repose adopted in *Lampf.*

Subsequently, Congress reversed *Lampf* by enacting § 27A of the 1934 Act. Section 27A instructed courts to reinstate cases, dismissed under *Lampf,* which met certain criteria. The plaintiffs asserted that their claims against Roberts and R & E met these requirements. The district court, however, denied the plaintiffs' motion for reconsideration. It held that § 27A required reinstatement only when the plaintiffs' claims were filed timely under the pre-*Lampf* limitations period, along with the applicable principles of retroactivity. The plaintiffs, continued the district court, could not demonstrate that their claims were filed timely under this court's decision in *Short v. Belleville Shoe Manufacturing Co.,* 908 F.2d 1385 (7th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991), which, like *Lampf,* had established a one-year statute of limitations combined with a three-year statute of repose. Particularly, the district court held that the plaintiffs could not show reliance on pre-*Short* law because of the short time between discovery of the cause of action and the filing of the complaint. Consequently, the district court determined that *Short* should be applied retroactively and that the plaintiffs' claims were time-barred.

---

1. Roberts and R & E previously had filed a motion for summary judgment that was denied by the court on September 15, 1991. Although Roberts and R & E had addressed the statute of limitations issue in their brief in support of their motion, the district court did not address the statute of limitations question.

The plaintiffs now appeal. They allege three errors in the district court's decisions. First, they argue the district court erred in failing to reinstate their claims against Roberts and R & E. Second, they claim the district court abused its discretion in denying them leave to file their third amended complaint. Finally, they allege error in several discovery determinations made during the course of litigation. We address each of these in turn.

## II

## ANALYSIS

To resolve the issues involved in this case, we again must enter the arcane world of borrowing statutes of limitations. Prospective application of the Supreme Court's decision in *Lampf* will resolve for future litigants the appropriate limitations for Rule 10b–5 causes of action.

The starting point of our analysis is the congressional directive of § 27A of the Act. As stated above, § 27A was a response to the Supreme Court's opinions in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), and *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439 (1991). *Lampf* adopted a uniform federal statute of limitations for Rule 10b–5 causes of action borrowed from § 13 of the Securities Act of 1933.[2] *Jim Beam* addressed the issue of retroactivity generally. This decision modified the traditional analysis of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), and held that "[o]nce retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application." *Jim Beam,* —— U.S. at ——, 111 S.Ct. at 2447–48. Because the *Lampf* Court had chosen retroactive application for the

litigants before it, the decision was retroactive for all others. Consequently, under *Jim Beam,* all Rule 10b–5 causes of action that were filed outside of the combined one-year statute of limitations and three-year statute of repose, taken from § 13, were untimely.

Taking note of the mass dismissal of cases pursuant to these decisions, Congress enacted § 27A. At bottom, § 27A applies the ruling in *Lampf* prospectively. It also instructs courts to reinstate cases, dismissed under *Lampf,* which meet certain enumerated criteria. It states:

a. Effect on pending causes of action

The limitation period for any private civil action implied under section 78j(b) [10(b)] of this title that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

b. Effect on dismissed causes of action

Any private civil action implied under section 78j(b) [10(b)] of this title that was commenced on or before June 19, 1991—

(1) which was dismissed as time barred subsequent to June 19, 1991, and

(2) which would have been timely filed under the limitation period provided by the laws applicable, including principles of retroactivity, as such law existed on June 19, 1991,

shall be reinstated on motion of the plaintiff not later than 60 days after December 19, 1991.

15 U.S.C. § 78aa–1. There is no question that the plaintiffs took the appropriate steps to reinstate their claims. Therefore, following the statutory directive, we must look to the pre-*Lampf* law of the Seventh Circuit, and the principles of retroactivity in force at

---

**2.** § 13 of the Securities Act of 1933, as amended by the Securities Exchange Act of 1934, provides:

No action shall be maintained to enforce any liability under section 77k or section 77*l* (2) unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action to enforce a liability created under

section 77*l* (1), unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or section 77*l* (1) more than three years after the security was bona fide offered to the public, or under section 77*l* (2) more than three years after the sale.

15 U.S.C. § 77m.

that time, to determine the timeliness of the plaintiffs' causes of action.[3]

Prior to *Lampf,* this court had reevaluated its long-standing rule of adopting the closest analogous state statute of limitations for Rule 10b–5 causes of action. We had determined that a rule from federal law provided a closer analogy than the available state law and also that federal policies made the adoption of a federal statute more appropriate. Consequently, in *Short v. Belleville Manufacturing Co.,* 908 F.2d 1385 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991), we had adopted the limitations period found in § 13 of the Securities Act of 1933 for Rule 10b–5 causes of action.[4] Thus, § 27A merely reinstated the *Lampf* statute of limitations in the Seventh Circuit.

Section 27A not only instructs us to reinstate the pre-*Lampf* rule, but also instructs us to apply that rule according to the pre-*Jim Beam* retroactivity principles in our circuit. *Short,* however, did not address its retroactivity; it explicitly left open "all questions concerning retroactive application of this decision." *Short,* 908 F.2d at 1389–90. Our task, therefore, is to determine whether *Short* should be applied retroactively to the parties before us, using the principles of retroactivity of this circuit that existed on June 19, 1991. *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), governs this inquiry.

■ *Chevron Oil* requires a "case-by-case balancing of three factors." *McCool v. Strata Oil Co.,* 972 F.2d 1452, 1459 (7th Cir.1992).

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits of each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Chevron Oil,* 404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted). This traditional analysis is modified when the rule at issue is a statute of limitations. "As to the second two factors, new statutes of limitations are generally applied prospectively so long as the plaintiff can demonstrate reliance on the old limitations period." *McCool,* 972 F.2d at 1459 (citing *Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1309–10 (7th Cir.1989)); *see also Short,* 908 F.2d at 1390 ("[T]he retroactive application of decisions affecting periods of limitations is a question of some subtlety depending on the nature of reliance interests.").[5]

Even under the collapsed *Chevron Oil* analysis, however, the plaintiffs must come forth with evidence that they relied on pre-*Short* law. The defendants maintain that the plaintiffs cannot show evidence of reliance; they base this belief on dicta from *Short.* In *Short,* this court stated that when a party files suit shortly after discovering her cause of action, no reliance can be shown. *Short,*

---

**3.** We note that the Sixth Circuit recently has held § 27A unconstitutional. *Plaut v. Spendthrift Farm, Inc.,* 1 F.3d 1487 (6th Cir.1993). It held that § 27A violated the doctrine of separation of powers because the reinstatement provisions interfered with the final judgments of courts. Because the constitutional issue was neither raised nor briefed by the parties, we have no occasion to address it in this appeal.

**4.** *See supra* note 2.

**5.** That *Short* overruled clear past precedent is obvious from its language: "For many years we

have applied to cases under Rule 10b–5 statutes of limitations borrowed from state blue sky statutes, adding an overlay of tolling principles from state and federal law." 908 F.2d at 1387. Although we lamented being bound to state law in *Norris v. Wirtz,* 818 F.2d 1329, 1333 (7th Cir.) ("It is too late for an inferior federal court to turn back the clock."), *cert. denied,* 484 U.S. 943, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987), we were, until *Short,* so bound. We do not think *Wirtz* fairly can be read to foreshadow the break that *Short* effected.

908 F.2d at 1389 ("Short cannot have relied on Illinois law, because she claims to have been unaware of the basis for litigation until a short time before filing suit."). Consequently, defendants argue, because the plaintiffs filed this suit in March 1989, shortly after they discovered the alleged wrong earlier in 1989, no reliance can be shown. The plaintiffs rest their argument—that they relied on prior law—upon *McCool.* In *McCool,* investors had consulted an attorney in 1985 and had sued the defendant in state court in 1987. The lawsuit, however, was dropped in favor of the litigation in federal court. "This is a move," stated the court, "that plaintiffs would presumably not have made had they anticipated that their federal claims would be time-barred." *Id.* at 1459. Based on this fact, the *McCool* court concluded "that there is adequate evidence on the record to show the plaintiff's reliance on the old rule." *Id.* The plaintiffs argue that their actions, filing suit and pursuing their claims through discovery, are similar to the actions taken by the plaintiffs in *McCool;* neither action would have been taken had the parties anticipated the claims were time-barred. Consequently, the plaintiffs maintain, they have shown reliance.

We note that the determination of reliance here is somewhat of an academic exercise. Whether or not *Short* is applied retroactively, the plaintiffs' claims are time-barred. If *Short* is applied retroactively, a three-year statute of repose barred the plaintiffs' claims in 1987, three years after the date of sale. If *Short* is not applied retroactively, we believe the five-year Illinois statute of repose cut off plaintiffs' claims in 1989. We set forth the alternative analyses below.

6. The defendants, although they made an argument based on the dicta in *Short,* seemed to rest that argument on the fact that the fraud was first discovered in early 1989 and the original suit, without the defendants at issue, was filed approximately one month later. However, these facts do not support a finding of nonreliance based on the dicta in *Short.* If these were the applicable facts, the plaintiffs would not have filed their suit shortly after discovery of the fraud *with respect to the defendants at issue.* What does support a finding of nonreliance based on *Short* is that the plaintiffs discovered Roberts' alleged participation in the fraud in late 1989, shortly before adding him and R & E as defendants in January 1990.

## A. *Applying* Short *Retroactively*

### 1.

■ In *Short,* the question of retroactivity had not been presented to us. Nevertheless, we observed that the retroactivity of "decisions affecting periods of limitations is a question of some subtlety depending on the nature of reliance interests." *Short,* 908 F.2d at 1390. We also noted that Ms. Short could not have demonstrated the requisite reliance on the former statute of limitations "because she claim[ed] to have been unaware of the basis for litigation until a short time before filing suit." *Id.* Under this approach, when the discovery of the action and the filing of the suit is proximate, reliance cannot be shown.

■ In applying the *Short* approach to the case before us, we initially note that only two defendants, Roberts and R & E, are before us. These defendants were not implicated in the first complaint or the first amended complaint. It was only after the plaintiffs received responses to their first discovery requests, in late 1989, that they discovered facts which led them to believe that Roberts and R & E may have aided and abetted the other defendants in violations of the securities laws. For this reason, the plaintiffs filed, with leave of court, a second amended complaint in January 1990. Because there was such a short time between discovery of the alleged fraud and the filing of the suit,[6] *Short* suggests that the plaintiffs cannot establish reliance on the old statute of limitations. Consequently, *Short* applies retroactively.[7]

7. Another recent decision of this court determined that, as applied to the situation in that case, the dicta in *Short* was not dispositive. *Eckstein v. Balcor Film Investors,* 8 F.3d 1121 (7th Cir.1993). There we held that *McCool* provided the central inquiry to the retroactivity question: "If the plaintiffs had known that *Short* would apply to their claim, could and would they have filed within the period of limitations?" *Id.* at 1129. In *Eckstein,* we determined that the plaintiffs could have relied on Wisconsin law because they had available to them an alternative federal forum in California with a different statute of limitations. The situation was therefore similar to *McCool* in which the plaintiffs abandoned a pending state suit in favor of pursuing their

### 2.

The next step in our analysis under *Short* is to determine whether, under the facts of this case, the plaintiffs' claims are barred. In order to answer this question, we must first ascertain the starting point for the three-year statute of repose.[8] The plaintiffs submit that each annual cash call from 1984 through 1988 was a separate investment under the investment decision doctrine as articulated in *Goodman v. Epstein*, 582 F.2d 388 (7th Cir.1978), *cert. denied*, 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979), because previously it had not been disclosed to them that additional capital contributions would be necessary. Consequently, the statute did not start to run until the last capital contribution in 1988. Roberts and R & E argue, on the other hand, that each additional capital contribution was required as a condition of the original sale of the limited partnership interest in 1984 and therefore did not constitute an additional investment decision. Furthermore, the defendants claim that they can only be implicated in the first sale because their involvement necessarily ended in September 1984 when the limited partnership agreement was filed.

We look first to *Goodman*. In *Goodman*, a group of architects, engineers, and developers were the general partners of a land development general partnership. These general partners were "entrusted with the management authority to develop ... vacant land." *Goodman*, 582 F.2d at 391. The limited partners agreed to furnish total capital of $3 million; however, the limited partnership agreement did not require the payment of this up front. The agreement contemplated a series of transactions over an extended period of time. The court distin-guished this situation from a " 'one-shot deal.' " *Id.* at 412.

The seller-defendants were required ... to perform certain management functions which were the primary determinants of the value of the securities sold. Most of these management functions were to be performed after the execution of the Limited Partnership Agreement and the contributions of capital (though they could have been expressly lumped into one up-front payment) were spaced out, "from time-to-time," over the course of the management's performance. The parties clearly envisioned an on-going relationship under the Agreement with the management making all of the decisions affecting the basic value of the enterprise and its changes of progressing toward its advertised goal. Because of this ongoing relationship and the fact that the entire $3,000,000 for Phase I was not collected "up front" but was to be contributed "from time-to-time" as Phase I progressed toward completion, the purchasers were left with the possibility of an investment decision each time a call was made.... Had the purchasers agreed to pay the entire three million dollars in one shot, perhaps they would have insisted upon a different type of agreement, providing more affirmative accountability by the General Partners, or would have taken a more active role in policing the disclosures of the General Partners.

*Id.* at 412–13. Because the agreement contemplated a series of payments, there were a series of investment decisions that could be made by the investors. *Id.* at 413.

We believe that *Goodman* is distinguishable from the facts here. As we noted in *Pommer v. Medtest Corporation*, 961 F.2d

claims in federal court. Consequently, the fact that they filed suit shortly after discovering their cause of action was not dispositive. Dissimilarly, in the case before us, there is no evidence that the plaintiffs forewent other opportunities to pursue their claims. The plaintiffs maintain that it is sufficient to establish reliance under *McCool* that they filed and pursued their causes of action in court. We do not read *McCool* so broadly. The plaintiffs could not have complied with *Short*. Nor have they argued that they missed other opportunities to pursue their claims in reliance on Illinois law. Consequently, *McCool*

and *Short* render the plaintiffs' claims time-barred.

**8.** There is no question presented to us with regard to the one-year statute of limitations. The plaintiffs discovered the possible involvement of Roberts and R & E in late 1989 and filed suit in early 1990, within the one-year statute of limitations of *Short*. We do not read the defendants' brief to suggest that the plaintiffs failed to exercise reasonable diligence in discovering these claims. Therefore, we assume that the plaintiffs complied with the one-year statute of limitations.

620, 626 (7th Cir.1992), *"Goodman* depends on the fact that the partnership agreement did not compel the investors to comply with each request for funds." However, the Valley Two Limited Partnership Agreement (the "Agreement") explicitly requires the limited partners to make additional contributions when called by the general partner. In ¶ 4.4, the Agreement states: "It is acknowledged by each of the parties hereto that failure to make the additional capital contributions as required above at the times so dictated by the Managing Partner shall cause any such partner to be in default hereunder...." Furthermore, ¶ 4.4 also sets forth the consequences of a default: "As a consequence of any such default, ... that partner shall forfeit his total interest in the partnership capital and partnership profits and losses, and shall have been deemed to have transferred his partnership interest to the remaining partners." Capital contributions were not an option under the Agreement.[9] Because the only investment decision here was made in 1984, that is when the sale of securities took place and consequently, when the three-year statute of repose began to run. Therefore, the plaintiffs' claims against Roberts and R & E were time-barred in 1987, long before the plaintiffs added these defendants to the suit in January 1990.

## B. *Applying* Short *Prospectively*

█ Assuming arguendo that *Short* applies only prospectively with regard to these defendants, we look to pre-*Short* law to determine the applicable statute of limitations. For years prior to *Short*, this court, like most courts, borrowed a state statute of limitations for Rule 10b–5 causes of action. Borrowing the statute of limitations from Illinois blue sky law, we applied the three-year statute of limitations found in Ill.Rev.Stat. ch. 121½ ¶ 137.13(D) (1991).[10] *See McCool,* 972 F.2d at 1457 ("At the time it rendered its decision, the district court was clearly correct to apply the statute of limitations from Illinois blue-sky law...."); *Davenport v. A.C. Davenport & Son Co.,* 903 F.2d 1139, 1140 (7th Cir.1990) ("[T]he rule in the Seventh Circuit is that the statute of limitations applicable to the state blue sky law must be borrowed to determine the relevant limitation period."); *Suslick v. Rothschild Securities Corp.,* 741 F.2d 1000, 1004 (7th Cir.1984) ("[T]his Court and the district courts have repeatedly held that the appropriate statute of limitations is the three-year limitation period imposed by Ill. Rev.Stat. ch. 121½ ¶ 137.13D (1977).").

█ Illinois law provides that the statutory period begins to run when the plaintiff knows or should know that the securities laws have been violated. However, when we adopt a state statute of limitations, federal accrual rules apply. *McCool,* 972 F.2d at 1460 ("[A]lthough we borrow the Illinois statute of limitations, the accrual of a federal cause of action is a matter of federal law."); *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1990) (stating that federal accrual rule is read into statutes of limitations in federal question cases even "when those statutes of limitations are borrowed from state law"), *cert. denied,* — U.S. ——, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). Similar to the Illinois statutory scheme, the

---

**9.** The plaintiffs seem to allege that, in spite of the clear language of the limited partnership agreement, Lurie's failure to inform plaintiffs of the need for additional capital should control. We disagree. The plaintiffs received and signed copies of the limited partnership agreement in July 1984. It was incumbent upon the plaintiffs to read the agreement and determine whether or not the terms were acceptable. When the plaintiffs signed the agreement, they were contractually bound to make the additional cash calls as specified by ¶ 4.

**10.** The statute provides:
No action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after 3 years from the date of sale;

provided, that if the party bringing the action neither knew nor in the exercise of reasonable diligence should have known of any alleged violation of [the subsections dealing with securities fraud] which is the basis for the action, the 3 year period provided herein shall begin to run upon the earlier of:
(1) the date upon which the party bringing such action has actual knowledge of the violation of this Act; or
(2) the date upon which the party bringing such action has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation of the Act....
Ill.Rev.Stat. ch. 121½, ¶ 137.13(D) (1991).

federal accrual rule is a discovery rule; the statute does not run unless the plaintiff knew or should have known about his injury. *See Cada*, 920 F.2d at 450 ("The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the 'discovery rule.' ").[11] Consequently, the three-year statute of limitations runs from the date the plaintiffs discovered their injury.

The Illinois statute, however, does not only set a statute of limitations of three years from the date of discovery. *See supra* note 10. It also provides: "[I]n no event shall the period of limitation so extended be more than two years beyond the expiration of the three year period otherwise applicable." Ill.Rev. Stat. ch. 121½, ¶ 137.13(D) (1991). The Illinois legislature determined that there should be a date on which those who sell securities should be free from the threat of litigation. We deal, however, with a federal cause of action. The Illinois statute of repose will apply only if it is compatible with our scheme of federal securities law and with the federal accrual rule.

█ We have, on several occasions, addressed the workings of statutes of repose in federal securities cases. In *Norris v. Wirtz*, 818 F.2d 1329, 1332 (7th Cir.1987), for example, we stated:

> The Securities Act of 1933 gave the purchaser two years from the date of discovery of the fraud, but in no event more than ten years after the sale. When Congress enacted the Securities Exchange Act of 1934, it amended this statute (§ 13, 15 U.S.C. § 77m) and added a battery of new statutes of limitations, one for each of the express rights of action in the '34 Act. The express periods added or amended in 1934 allow suit no later than one year after the plaintiff discovers the facts and in no event more than three years after the transaction in question.... The legislative history in 1934 makes it pellucid that Congress included statutes of repose because of fear that lingering liabilities would disrupt normal business and facilitate false claims. It was understood that the three-year rule was to be absolute.

*Id.* at 1332. Congress, through these enactments, expressly approved not only of the discovery rule, but also of the use of a statute of repose to limit that rule appropriately. We recognized that the two doctrines, the federal discovery rule and a statute of repose, were compatible in *Short*. We stated:

> Section 13 gives one year from discovery, but *"[i]n no event* shall any such action be brought to enforce a liability created under section 12(2) more than three years after the sale." (Emphasis added.) Conduct by the defendant that postpones the date of discovery does not extend the period of suit by more than two years. *[In re] Data Access [Systems Security Litigation*, 843 F.2d 1537] concluded that equitable tolling does not postpone the accrual of the claim, or equitable estoppel does not bar the invocation of § 13.

Courts say that equitable tolling does not apply under § 13, but this is not strictly accurate. Equitable tolling and related doctrines do not extend the period of limi-

---

**11.** Within the Seventh Circuit there has been some question as to what the federal accrual rule is. *Compare Suslick*, 741 F.2d at 1004 ("It is settled that a cause of action under either the Securities Act of 1933 or the Securities Exchange Act of 1934 arises on the date the sale of the instrument is completed.") and *McCool*, 972 F.2d at 1460 ("In securities fraud cases, the federal rule is that plaintiff's cause of action accrues on the date the sale is completed.") *with Cada*, 920 F.2d at 450 ("The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the 'discovery rule' of federal common law, which is read into statutes of limitations in federal question cases (even when those statutes of limitations are bor-

rowed from state law) in the absence of contrary directive from Congress."). We think *McCool* explains this discrepancy well. Under either approach, the court explains, the analysis is the same.

> We have assumed ... that equitable tolling automatically extends the limitations period for a securities fraud claim by the amount of time the fraud goes undiscovered. In *Cada*, we decided that equitable tolling does not automatically extend the limitations period, but if we were applying the *Cada* framework we would be talking about the discovery rule, which does automatically extend the limitations period.

*McCool*, 972 F.2d at 1461.

tation by more than the two-year grace period § 13 allows.

*Short*, 908 F.2d at 1391 (citations omitted) (emphasis in original). If the three-year statute of repose did not cut off the working of the discovery rule, the "in no event" language would be rendered meaningless. *Short*, 908 F.2d at 1391 ("Unless the 'in no event more than three' language cuts off claims of tolling and estoppel at three years, however, it serves no purpose at all—what other function could be served by such language in a statute that starts the time on discovery?").[12]

 We believe it is completely compatible with the scheme of federal securities law, and that scheme's incorporation of the federal discovery rule, to employ the Illinois five-year statute of repose in addition to the three-year statute of limitations. Employing the statute of repose achieves a result far closer to the congressional purpose than allowing the discovery rule to postpone a suit indefinitely. Consequently, we apply Illinois' five-year statute of repose which runs from the date of the sale of the security.[13] Because the only sale of a security took place in 1984, *see supra* Part A.2, the plaintiffs' claims were barred in 1989, prior to the time at which plaintiffs brought an action against Roberts and R & E.[14]

## C. Denial of Plaintiffs' Request to Amend Complaint

 The plaintiffs assert that the district court erred in denying them leave to file their third amended complaint. Specifically, the plaintiffs believe that the district court should have allowed them to expand their claims against Roberts and R & E to include conspiracy to defraud, common law fraud, violations of RICO, aiding and abetting to violate RICO, and conspiracy to violate RICO. We review a district court's denial of leave to file an amended complaint for abuse of discretion. *Kush & Assoc., Ltd. v. American States Ins. Co.*, 927 F.2d 929, 935 (7th Cir.1991). In *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Court determined that leave to amend should be granted under Federal Rule of Civil Procedure 15(a) unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *See also Perrian v. O'Grady*, 958 F.2d 192, 193 (7th Cir.1992) (quoting *Foman* standard). Consequently, we evaluate the actions of the district court for compliance with the *Foman* directive.

The district court provided two primary reasons for denying the plaintiffs' request to file a third amended complaint. The district court determined that the amended complaint contained "new complex and serious charges" which would undoubtedly require additional discovery for the defendants to rebut. Mem. Op. February 4, 1991 at 3. Given the fast-approaching trial date, the district court determined that allowing such

---

12. *Cf. Cada*, 920 F.2d at 451 ("The rule in the federal courts is that both tolling doctrines—equitable estoppel and equitable tolling—are, just like the discovery rule, grafted on to federal statutes of limitations. To this as to most legal generalizations, there are exceptions. Neither tolling doctrine applies to statutes of repose; their very purpose is to set an outer limit unaffected by what the plaintiff knows.").

13. We note that this is not a "new" rule in the Seventh Circuit such that we must also analyze its retroactive effect. The Seventh Circuit has always looked to blue sky laws to determine periods of limitations. *See supra* p. 704. The Illinois blue sky law was amended in 1986, well before this action was commenced, to include a statute of repose. Furthermore, in *McCool*, this court determined that indeed the five-year statute

of repose was applicable. In *McCool*, the plaintiffs' claims were not time-barred by the statute of repose, and therefore we did not have to resolve the question of whether "federal tolling rules trump a borrowed state statute of repose." As we have demonstrated, however, the two are not incompatible, but complementary.

14. The plaintiffs allege that, even if a statute of repose applies, equitable tolling principles also apply and save their causes of action. We disagree. As we have noted previously, "[n]either tolling doctrine applies to statutes of repose; their very purpose is to set an outer limit unaffected by what the plaintiff knows." *Cada*, 920 F.2d at 451; *see also Short*, 908 F.2d at 1391 ("Conduct by the defendant that postpones the date of discovery therefore does not extend the period of suit by more than two years.").

an amendment would prejudice significantly the defendants in their preparation for trial. This was especially true because the

> only allegations against these defendants up to this point have been allegations of aiding and abetting a securities law violation. Thus, Roberts and R & E have conducted limited discovery, knowing that they can only be held liable if plaintiffs first prove the liability of the alleged primary violators....

*Id.* In addition, the district court was concerned that this was a tactic on the part of the plaintiffs to postpone the trial date. Given that these new allegations arose out of the same transaction or occurrence as the others, the district court questioned why the plaintiffs did not seek to amend the complaint until one month before the close of discovery. Thus, the district court cited the "seemingly dilatory nature of the request" as another reason for denying the plaintiffs' leave to amend their complaint. *Id.*

 We believe that the district court did not abuse its discretion in denying the plaintiffs' motion for leave to file a third amended complaint. The district court's reasons for denying the motion, undue prejudice and dilatory practices, are sufficient under *Foman.* Furthermore, the district court adequately explained and supported its decision. Consequently, we affirm the court's denial of the plaintiffs' request to file a third amended complaint.[15]

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

**15.** The plaintiffs have also asserted that the district court erred when it failed to compel the defendants to produce documents that the defendants claimed were privileged pursuant to the attorney client privilege. Because the plaintiffs' 10b–5 causes of action are time-barred, and be-

cause we have determined that the district court did not err in refusing the plaintiffs leave to file their third amended complaint, the litigation is effectively over. We see no reason to expend further judicial resources on an issue which is now moot.