30 F.3d 136
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
William E. THERIOT, III, Plaintiff-Appellant,
v.
CAPTAIN JAMES SPRINKLE, INC. and U.S. Fire Ins. Co.,
Defendants-Appellees.
 No. 93-3709.
 United States Court of Appeals, Seventh Circuit.
 Argued June 14, 1994.
Decided June 28, 1994.
 
 Before ESCHBACH, COFFEY, and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 William E. Theriot, III, a seaman employed by Captain Sprinkle, was injured while working as a mate aboard the M/V PEARL RIVER on the Illinois River near Lacon, Illinois. Although Captain Sprinkle and U.S. Fire Insurance took a seaman's release from Theriot in exchange for payment of $100,000, Theriot subsequently filed an action against these defendants. Prior to filing an answer, the defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) as time-barred.
 
 
 2
 In his response, Theriot asserted for the first time that the doctrine of equitable estoppel applied to prevent the defendants from asserting the statute of limitations as a defense because by their conduct the defendants "overreached"[1] the plaintiff in the taking of the seaman's release. The district court determined that granting Theriot leave to amend his complaint to plead equitable estoppel would be futile and dismissed the action against the defendants. Theriot appeals from final judgment entered pursuant to Rule 54(b).[2] The issue presented is whether the district court properly concluded that plaintiff could prove no set of facts to support his claim of equitable estoppel as a bar to the statute of limitations defense.
 
 II. ANALYSIS
 A. Dismissal of the Complaint
 
 3
 The running of the statute of limitations is an appropriate ground for dismissal if it is apparent on the face of the complaint. Rylewicz v. Beaton Services, Ltd., 698 F.Supp. 1391, 1398 (N.D.Ill.1988); see also Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir.1980). The amended complaint adding these defendants was filed on May 14, 1992, over seven months after the three-year statute of limitations applicable to both the Jones Act, Clauson v. Smith, 823 F.2d 660, 661 (1st Cir.1987) (citing Engel v. Davenport, 271 U.S. 33, 38-39 (1926)), and general maritime law had expired. Thus, there is no dispute that the expiration of the statute of limitations was clear from the face of the complaint. We have held that where the "[p]laintiff by the allegations of his complaint erected the limitation bar ... it is his duty in order to extricate himself therefrom to plead any exceptions upon which he relied." Kincheloe v. Farmer, 214 F.2d 604, 605 (7th Cir.1954), cert. denied, 348 U.S. 920 (1955). Dismissal will be appropriate, however, only if the allegations of the complaint, liberally construed, would not permit the plaintiff to avoid the limitations bar. Id.
 
 
 4
 The appellees argue that plaintiff's first amended complaint should have been dismissed without leave to amend in order to plead estoppel. While Kincheloe, provides authority for this, appellees have offered no support for precluding a plaintiff under these circumstances from seeking leave to amend his complaint to assert equitable principles in an effort to avoid the bar. Theriot attempted to do just that by filing a motion for leave to file an amended complaint along with a proposed amended complaint asserting equitable estoppel.
 
 
 5
 A district court's decision to deny leave to file an amended complaint is reviewed for an abuse of discretion. Moore v. Indiana, 999 F.2d 1125, 1128 (7th Cir.1993). According to Rule 15(a) "leave to amend shall be freely given when justice so requires." Denying leave to amend will not be considered an abuse of discretion when the amendment sought would be futile, such as when it fails to cure defects in the original complaint, fails to state a valid legal theory of liability, or could not withstand a motion to dismiss. Id.; Arazie v. Mullane, 2 F.3d 1456, 1464 (7th Cir.1993); Bower v. Jones, 978 F.2d 1004, 1008 (7th Cir.1992); Wilson v. American Trans Air, Inc., 874 F.2d 386, 392 (7th Cir.1989). However, if the underlying facts or circumstances relied on in plaintiff's proposed amended complaint could support an estoppel theory, he should be given the opportunity to test his claim on the merits.
 
 
 6
 The district court concluded that plaintiff's effort to amend his complaint would be futile because Theriot had failed to allege any conduct by Captain Sprinkle that would provide a factual basis for equitable estoppel. In reaching this conclusion, however, the district court did not limit itself to the allegations in the proposed amended complaint,[3] but instead explicitly considered the exhibits attached to Theriot's motion in opposition to the motion to dismiss.[4] By considering material extraneous to the proposed amended pleading the district court arguably converted the defendants' motion to dismiss into a motion for summary judgment. E.g., Fleischfresser v. Directors of Sch. Dist. 200, 15 F.3d 680, 684-85 (7th Cir.1994) (a motion under 12(b)(6) is effectively converted into a Rule 56 motion when the district court considers matters outside the pleadings); Fed.R.Civ.P. 12(b). Dismissal without notice to the parties of conversion, or alternatively, failure to exclude material outside of the pleadings in the decision-making process can constitute reversible error. Matter of Wade, 969 F.2d 241, 249 (7th Cir.1992). However, even without the proper conversion, a dismissal may be affirmed if absent consideration of the extraneous material the standards of Rule 12(b)(6) dismissal are met. Id.; R.J.R. Services, Inc. v. Aetna Casualty & Surety, Inc., 895 F.2d 279, 281 (7th Cir.1989). Therefore, even if the district court improperly relied on facts outside of the proposed amended complaint, we can affirm the court's order because Theriot has failed to allege any facts sufficient to support his claim that the limitations period should be tolled on equitable grounds.[5]
 
 B. Equitable Estoppel
 
 7
 Theriot does not dispute that his action against Captain Sprinkle and U.S. Fire was filed outside of the limitations period. Rather, he argues that equitable principles operate to excuse the late filing where at the time of signing the release he was overreached because his impaired mental condition prevented him from fully understanding the effect of the release.[6] Thus, he contends, the release should be ruled invalid. It is well established that a seaman's release may be rescinded if it was not made by the plaintiff with full understanding of the effect of the release. Garrett v. Moore-McCormack Co., 317 U.S. 239, 251 (1942). If Theriot had filed against Captain Sprinkle and U.S. Fire within the statute of limitations, and the defendants sought to use the seamen's release as a defense to the action, the burden would have rested with the defendants to prove that the release was valid.[7] See id. However, having filed outside of the limitations period the viability of the action no longer turns simply on whether release was valid, but rather the threshold question is whether the plaintiff can overcome the limitations bar. Both his memorandum in opposition to 12(b)(6) dismissal and his proposed amended complaint specifically invoke the doctrine of equitable estoppel in an effort to excuse the delay in filing suit.
 
 
 8
 "Equitable estoppel suspends the running of the statute of limitations during any period in which the defendant took active steps to prevent the plaintiff from suing."[8] Singletary v. Continental Ill. Nat'l Bank & Trust Co., 9 F.3d 1236, 1241 (7th Cir.1993); see Cange v. Stotler & Co. Inc., 826 F.2d 581, 586 (7th Cir.1987); see also Bomba v. W.L. Belvidere, Inc., 579 F.2d 1067, 1070 (7th Cir.1978). Estoppel may be invoked for example where the defendant actively misrepresented the legal rights of the plaintiff, e.g., Glus, 359 U.S. at 232 (misled plaintiff about the length of the statute of limitations period), promised to pay a claim if the plaintiff refrained from filing suit, e.g., United States v. Reliance Ins. Co., 436 F.2d 1366, 1370 (10th Cir.1971), misinformed plaintiff as to the nature or extent of his injury, see Holifield, 421 F.Supp. at 135 (citing Louisville & Nashville R. Co. v. Disspain, 275 F.2d 25 (6th Cir.1960)), or concealed evidence which the plaintiff needed in order to determine that he had a claim, see Singletary, 9 F.3d at 1241. Thus it is the nature of the representations and the conduct of the defendant which are of crucial significance in determining whether the plaintiff was induced to delay filing suit. Burke, 441 F.2d at 948; see also Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231 (1959). However, the misleading representation or conduct of a defendant need not be intentional or fraudulent, or even intended to induce delay, provided plaintiff's reliance on the defendant's words or actions in forbearing suit was reasonable, that is the plaintiff delayed filing suit in good faith because he did not know nor should have known that the defendant's conduct (innocent or not) was misleading. See Bomba, 579 F.2d at 1071; Singletary, 9 F.3d at 1241 (neither fraud nor concealment is required for equitable estoppel). A plaintiff seeking to rely on estoppel bears the burden of demonstrating that he was actually misled. Clauson, 823 F.2d at 663. Thus, when the running of the statute of limitations is clear, it is incumbent upon the plaintiff to allege sufficient facts which illustrate that the conduct or representations of the defendant would give rise to estoppel.
 
 
 9
 To prevail in this case, Theriot must establish that the circumstances surrounding the taking of the release somehow induced or lulled him into not filing suit. The mere fact that the plaintiff may not have understood the release, while perhaps sufficient to render the release invalid, does not itself trigger the doctrine of equitable estoppel. It is conceivable, however, that under certain circumstances an invalid release may give rise to equitable estoppel. For example, if the source of plaintiff's misunderstanding can be attributed to misrepresentations by the defendant or its agents this may constitute conduct which actually misled the plaintiff. See Holifield, 421 F.Supp. at 136. Also if the misinformation was intentionally given it would constitute fraud, and fraud is merely a subset of equitable estoppel. Singletary, 9 F.3d at 1241. But Theriot does not allege that the defendants supplied him (intentionally or otherwise) with false or misleading information.[9] Although less clear, it is also possible that a defendant who secured a seamen's release by knowingly overreaching a mentally impaired seaman, yet who did not contribute to the seaman's misunderstanding in any way, would be estopped from asserting the limitations bar. Even assuming the release taken here is invalid, the facts as alleged in no way indicate that the defendants knowingly overreached Theriot.
 
 
 10
 The proposed amended complaint alleges only that he was "overreached at the time that the release was taken and that [his] mental condition prevented him from fully understanding the consequences of the release." There is no indication of why the defendants should be held accountable for the alleged overreaching. As noted, a seaman's failure to understand the consequences of a release is not necessarily attributable to the defendants unless the defendants affirmatively did something to contribute to the seaman's misunderstanding. Rather, as Theriot suggests here, the reason he may not have understood the release was due to his mental condition, not due to conduct or misrepresentations by the defendants. The documents submitted by Theriot only serve to support this conclusion.[10] Even if we were to consider these as additional allegations, as did the district court, we would reach the same conclusion that granting leave to amend to add the theory of equitable estoppel would be futile. Thus taking all the facts alleged by Theriot as true and drawing all reasonable inferences in his favor, he has failed to establish that he can avoid the limitations bar.
 
 C. Louisiana Direct Action Statute
 
 11
 A final matter concerns dismissal of U.S. Fire on the ground that a direct action against an insurer on a policy of marine protection and indemnity insurance, such as the one issued to Captain Sprinkle, was not permitted. The recent decision in Grubbs v. Gulf Int'l Marine, Inc., 625 So.2d 495 (La.1993), holding that the Louisiana Direct Action Statute permits an injured party to proceed directly against a marine protection and indemnity insurer is of no consequence in this case because Theriot must first overcome the limitations bar erected by the running of the three-year statute of limitations applicable to the Jones Act. See, e.g., Reeves v. Globe Indem. Co., 168 So. 488 (La.1936) (a claim brought under the Louisiana Direct Action Statute is governed by the limitation period applicable to the claim against the insured). Having concluded that Theriot has failed to state a claim that would entitle him to estop the defendants from asserting the defense of the statute of limitations, any attempt to pursue a claim against U.S. Fire under the direct action statute would also be time-barred.
 
 III. CONCLUSION
 
 12
 To avoid the limitations bar to his Jones Act claim, Theriot presents a novel estoppel argument. He claims that a seaman's release, allegedly invalid due to overreaching should work to estop a defendant from asserting the running of the statute of limitations in an untimely Jones Act claim. Without any factual allegation to illustrate that the defendants were responsible for misleading or misinforming the plaintiff, or knew that he did not comprehend the effect of the release there is no authority for Theriot's position. For these reasons, the judgment of the district court is
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Because seamen are considered "wards of the admiralty," "any undue inequality in the terms [of the release], any disproportion in the bargain, any sacrifice of rights on one side, which are not compensated by extraordinary benefits on the other ... is unjust and unreasonable ... and the bargain ought to be set aside." Garrett v. Moore-McCormack Co., 317 U.S. 239, 251 (1942) (quoting Harden v. Gordon, 11 F.Cas. 480, 485 (1823)). Accordingly, the burden is on the one who set-up the release to show that the seaman was not "overreached "--that he signed the release with full understanding of his rights
 
 
 [2]
 Severing these defendants who had previously settled with the plaintiff and whose limitations defense was unique to them provided a proper basis for a Rule 54(b) judgment. See, e.g., Ferguson v. Roberts, 11 F.3d 696 (7th Cir.1993) (Rule 54(b) judgment entered because action was time-barred and any equitable tolling or estoppel claims were precluded by the statute of repose)
 
 
 [3]
 Even though the district court's order did not indicate whether it considered the proposed amended complaint, we note that the allegations contained therein fail, as a matter of law, to support a claim of equitable estoppel
 
 
 [4]
 In support of his equitable estoppel argument Theriot submitted various documents intended to establish that he did not fully comprehend the terms of the release at the time of signing. Among these documents were medical records including a "Life Care Plan" prepared by Dr. Voogt, specialist in the assessment of life care needs for individuals suffering catastrophic injuries. the Receipt and Release executed by Theriot and his parents along with the transcript of the "Proces Verbal," and plaintiff's deposition testimony taken March 18, 1992, during discovery with Trumbull River Services, a co-defendant in this action against whom the action is still proceeding below
 
 
 [5]
 We note that the outcome would be the same were we to review this as a case in which the motion to dismiss had been effectively converted into a motion for summary judgment. The court's failure to give explicit notice to the parties, although not raised as error, would not be considered fatal "where nothing else could have been raised to alter the entry of summary judgment." Fleischfresser, 15 F.3d at 684-85. Theriot has presented no new allegations on appeal to demonstrate that further development of the facts would have supported his claim of equitable estoppel. Although he claims that he was not give an opportunity to conduct discovery on the estoppel issue, he did not file a Rule 56(f) motion or otherwise request an opportunity to conduct discovery. We need not rely on this finding, however, because we can reach the same decision by limiting our review to a determination of whether the claim could survive a motion to dismiss under Rule 12(b)(6). E.g., R.J.R. Services, Inc., 895 F.2d at 281 n. 3; see also Baucher v. Eastern Indiana Prod. Credit Assoc., 906 F.2d 332, 335 (7th Cir.1990) (reviewing court can affirm on any basis supported by the record)
 
 
 [6]
 This is perhaps a better argument for equitable tolling than for equitable estoppel. "[E]quitable tolling permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing." Singletary v. Continental Ill. Nat'l Bank & Trust Co., 9 F.3d 1236, 1241 (7th Cir.1993). Although he does not specify this as equitable tolling, the failure to identify the proper legal theory is not grounds for dismissal under 12(b)(6). Rather, the court should consider whether there is any legal theory upon which relief can be granted. Appley v. West, 832 F.2d 1021, 1030 (7th Cir.1987). Theriot's proposed amended complaint alleges that his "mental condition prevented him from fully understanding the consequences of the release." Given this broad reference to an alleged incapacity, it is conceivable that Theriot has stated a claim for equitable tolling
 Even so, Theriot was required to exercise due diligence in filing his action after such grounds ceased to be operational. Singletary, 9 F.3d at 1242. That is, the limitations period may be suspended only as long as it was reasonable for plaintiff to rely on the validity of the release as precluding the filing of an action. Once plaintiff was represented by counsel who pursued relief for injuries arising out the same occurrence as that which was the subject of the release, it became no longer reasonable to forebear suit in reliance on an allegedly invalid release. See Holifield v. Cities Serv. Tanker Corp, 421 F.Supp. 131, 135 (E.D.La.1976), aff'd w/out op. 552 F.2d 367 (5th Cir.1977) (even if prescription on Jones Act claim tolled when misrepresentations made regarding nature of injury led to an invalid release, running of limitation period recommenced once the effects of the earlier misrepresentation were removed through plaintiff's seeking independent advice).
 
 
 [7]
 In cases brought under the Jones Act, the plaintiff is not required to tender back any consideration received as a prerequisite to rescission. Smith v. Pinell, 597 F.2d 994 (5th Cir.1979) (per curiam); see Fleming v. United States Postal Service, No. 92-2735, slip op. at 4 (7th Cir. June 16, 1994)
 
 
 [8]
 Its application "takes its life, not from the language of the statute, but from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice." Id. Given its underlying policy, equitable estoppel has been held applicable to a Jones Act claim. Burke v. Gateway Clipper, Inc., 441 F.2d 946, 948 (3d Cir.1971) (per curiam); see also Clauson, 823 F.2d at 661; Sanchez v. Loffland Bros. Co., 626 F.2d 1228, 1231 (5th Cir.1980) (per curiam), cert. denied, 452 U.S. 962 (1981)
 
 
 [9]
 However, he does contend that the defendants should have told him that he might be entitled to recover damages for emotional distress, which would potentially encompass the self-inflicted gunshot wound he suffered after the leg injury and any damages related thereto. But he offers no direct support for imposing such an affirmative duty on the party taking the release. It should be noted that the defendants did inform Theriot at the time of the release that he could consult with an attorney to discuss his rights, but Theriot declined. Thus, at a minimum, the defendants did not provide any misinformation
 
 
 [10]
 The release agreement as well as affidavits accompanying the agreement were signed by Theriot in the presence of his parents, who also signed the release and affidavits. Copies of the release were given to Theriot and his parents prior to signing and the defendant's attorney explained the release on the record, answering any questions and also inquiring into Theriot's and his parents' understanding of the agreement. The transcript of settlement statement referred to a letter provided by Theriot's treating physician which stated that in his opinion, Theriot was mentally competent to make his own decisions. Theriot's parents agreed with that assessment of their son's mental functioning. Theriot was informed of his right to retain his own counsel to discuss his injury claim, but stated that he was comfortable with his father acting as his counsel and did not wish to have an attorney. Finally, in response to questioning by defendant's attorney, Theriot stated under oath that he understood the terms of the release