The **TRAINING INSTITUTE, INC.**,
Plaintiff/Appellant,

v.

**CITY OF CHICAGO**, Richard M. Daley, Mayor's Office of Employment and Training, Mary Gonzalez Koenig, Director of Met, and Alexander Grzyb, Purchasing Agent for the City of Chicago, Defendants/Appellees.

No. 95 C 4991.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 19, 1996.

Bennie E. Martin, Chicago, IL, for Plaintiff/Appellant.

Andrew S. Mine, Mary Beth S. Robinson, City of Chicago—Law Department, Chicago, IL, for Defendants/Appellees.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This matter is before the Court on appeal, pursuant to Federal Rule of Civil Procedure 73(d) and 74, from a judgment entered by United States Magistrate Judge Joan Humphrey Lefkow dismissing the case on Defendants' motion under Federal Rule of Civil Procedure 12(b). For the reasons discussed below, Magistrate Judge Lefkow's decision is affirmed.

## I. BACKGROUND

### A. Facts

Plaintiff/Appellant, The Training Institute, Inc. (TTI), is a corporation wholly owned by a white male.[1] In prior years, TTI was awarded federally funded job training contracts—pursuant to the Job Training Partnership Act (JTPA), 29 U.S.C. § 1501 *et seq.*—by Defendant/Appellee Mayor's Office of Employment and Training (MET), a department of Defendant/Appellee City of Chicago. Defendant/Appellee Mary Gonzalez Koenig is the Director of MET. Defendant/Appellee Alexander Grzyb is employed by the City of Chicago and is responsible for the implementation of the City's Minority–Owned and Women–Owned Business Enterprise Procurement Program (M/WBEP Program).

In April of 1992, two "Summer Youth" proposals submitted by TTI were denied funding by MET.

In July of 1992, TTI submitted a proposal for funding of a "Public Safety Officer" training program for the 1992–93 year. The proposal received a rating of 90. Despite the high ranking, TTI's funding was decreased 70% from the prior year. Adept Security, a black-owned business, also submitted a "Public Safety Officer" training program proposal for the 1992–93 year. Adept Security's proposal was rated a 32. Despite the low ranking, Adept Security's funding was increased by 50% from the previous year.

In January of 1993, MET canceled TTI's "Low Voltage Wiring" training contract. In response, TTI filed a grievance. A settle-

---

1. Plaintiff's complaint is unartfully drafted and thus very confusing. The complaint contains 13 "claims for relief," but, as the proceedings progressed, it appears that Plaintiff abandoned and/or combined some of the claims. Thus, it appears that there are many extraneous facts in the complaint. The Court will do its best to render a general summary of the dispute in the "facts" section of this order and provide more detail when necessary in the "discussion" section.

ment was reached—TTI received a contract for "Low Voltage Wiring" training in the amount of $113,000 and agreed to drop its grievance against MET. TTI also agreed not to commence litigation in any other forum regarding any of the allegations underlying the grievance.

In April of 1993, MET announced that it would be issuing a Request For Proposal (RFP) regarding a "Career Center" contract. In the summer and fall of 1993, TTI expressed an interest in the contract and requested the "Career Center" RFP from MET. TTI did not receive the RFP as early as other competing entities. Due to the belated receipt of the RFP, TTI requested that MET extend the time to submit its proposal. MET refused. Despite the lack of adequate time to prepare the proposal, TTI submitted the second highest ranked proposal. The contract presumably went to another entity.

In the spring of 1994, MET issued an RFP for the JTPA funding programs for the 1994–95 year. TTI submitted proposals to provide a "Public Safety Officer" training program, a "Low Voltage Wiring" training program, and a "Medical Billing Specialist" training program. MET rejected funding for all three of the proposals. MET informed TTI that the "Public Safety Officer" and "Low Voltage Wiring" training programs were not "demand occupations," thus, none of the entities offering training in these areas received contracts. Regarding the "Medical Billing Specialist" training program, MET informed TTI that it selected a company with more experience in the area.

In January of 1995, TTI filed a grievance complaining of the circumstances surrounding the selection of the 1993 "Career Center" contract provider and TTI's failure to obtain funding for the 1994–95 year for the "Public Safety Officer," "Low Voltage Wiring," and "Medical Billing Specialist" training programs. A grievance hearing was held. The grievance was dismissed.

### B. *The Complaint*

In August of 1995, TTI filed a complaint against Defendants. TTI instituted this matter under 42 U.S.C. § 1983, claiming that Defendants' conduct regarding the denial of funding for several of the proffered training programs violated its right to procedural due process, substantive due process, and equal protection. TTI also brought this action under 42 U.S.C. § 1981, claiming that it was discriminated against based on race regarding the circumstances surrounding the formation of some of the JTPA contracts. Finally, TTI challenged the constitutionality of the City's M/WBEP program, claiming that the M/WBEP program violates the Fourteenth Amendment's Equal Protection Clause.

### C. *Proceedings Before Magistrate Judge Lefkow*

Magistrate Judge Lefkow concluded that TTI's complaint did not state a claim under § 1983 for an infringement of the constitutional right of procedural due process, substantive due process, or equal protection. Regarding TTI's § 1981 claim, Magistrate Judge Lefkow concluded that it was barred by the applicable two-year statute of limitations. Finally, Magistrate Judge Lefkow determined that TTI lacked standing to challenge the constitutionality of the City's M/WBEP program. Accordingly, TTI's complaint was dismissed.

## II. DISCUSSION

 This matter is now before the Court on TTI's appeal of Magistrate Judge Lefkow's decision dismissing the complaint. When reviewing Magistrate Judge Lefkow's decision, this Court will be acting as an appellate court. *Ben v. Burgess,* No. 93 C 4683, 1996 WL 73598 (N.D.Ill. Feb. 16, 1996). Thus, Magistrate Judge Lefkow's decision dismissing the complaint will be reviewed *de novo. Hi–Lite Products Co. v. American Home Products Corp.,* 11 F.3d 1402, 1405 (7th Cir.1993).

### A. *Motion to Dismiss—Legal Standard*

 In ruling on a motion to dismiss, the Court "must accept well pleaded allegations of the complaint as true. In addition, the Court must view these allegations in the light most favorable to the plaintiff." *Gomez v. Illinois State Board of Education,* 811

F.2d 1030, 1039 (7th Cir.1987). Although a complaint is not required to contain a detailed outline of the claim's basis, it nevertheless "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Dismissal is not granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## B. *The Merits*

TTI challenges each aspect of Magistrate Judge Lefkow's decision. TTI argues that the complaint states viable claims under § 1983 based on procedural due process, substantive due process, and equal protection infringements. Also, TTI argues that the statute of limitations does not bar its § 1981 claim. Finally, TTI attacks Magistrate Judge Lefkow's decision that it lacked standing to challenge the constitutionality of the City's M/WBEP program. Each issue will be addressed in turn.

### 1. *§ 1983 Claims*

■ To establish a viable § 1983 claim, TTI must plead (1) that the conduct complained of was committed by a person acting under color of state law and (2) that the conduct deprived it of rights, privileges, or immunities secured by the Constitution or laws of the United States. *New Burnham Prairie Homes v. Village of Burnham,* 910 F.2d 1474, 1479 (7th Cir.1990). Defendants do not dispute that they acted under the color of state law, thus, the issue is whether TTI was deprived of rights secured by the Constitution.

### a. **Procedural Due Process**

■ TTI first argues that its complaint states a procedural due process claim. Procedural due process claims are analyzed under a two-step test. *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996). The first step requires a determination as to whether the plaintiff was deprived of a protected life, liberty, or property interest; the second step requires a determination as to what process was due. *Id.*

TTI concedes, as it must, that it had no protected property interest in receiving the JTPA contracts from MET. *See, e.g., Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1081 (7th Cir.1987) ("[A] disappointed bidder for a contract in Illinois lacks a property interest."), *cert. dismissed,* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988); *Coyne–Delany Co., Inc. v. Capital Development Board of State of Illinois,* 616 F.2d 341, 342–43 (7th Cir.1980) ("A bidder on a government contract has no legally enforceable rights against the award of the contract to a competitor other than those the government has seen fit to confer. * * * Illinois has not conferred any right on bidders....."). Instead, TTI argues that it had a protected property interest in having its proposal scrutinized by the criteria set forth in MET's RFP and, alternatively, that it had a protected property interest in receiving MET's RFP in a timely manner.[2] In other words, TTI argues that it had a property interest in MET's observance of its own procedures pertaining to the RFP solicitation process. And, because MET analyzed its proposal under factors not listed in the RFP and failed to send TTI timely notice of a particular RFP, TTI argues that its procedural due process rights were infringed.

The Court disagrees.

■ TTI's concession that it had no property interest in receiving the JTPA contracts from MET is fatal to its position. As noted repeatedly by the Seventh Circuit, if there is no underlying protected property interest (in

2. It appears that TTI's first argument pertains solely to the "Medical Billing Specialist" training contract that MET awarded to a company with more experience in the area for the 1994–95 funding year. TTI claims that the experience of the entity was not listed as a factor for MET to consider in the RFP. Regarding TTI's alternative argument, it appears that the timely notice issue pertains solely to the "Career Center" contract which MET issued an RFP for in 1993.

receiving the contracts), "the Due Process Clause does not require states to obey their own procedural rules in awarding [ ] contracts." *Kim Constr. Co., Inc. v. Bd. of Trustees of Village of Mundelein*, 14 F.3d 1243, 1246 (7th Cir.1994); *accord, Szabo*, 823 F.2d at 1081 ("The Supreme Court has held ... that the due process clause does not require states to follow their own procedures, if there is no underlying property interest."); *Three Rivers Cablevision, Inc. v. City of Pittsburgh*, 502 F.Supp. 1118, 1128 (W.D.Pa. 1980) ("We cannot accept the proposition that either of the plaintiffs possessed a protected property interest in the adherence by council to the procedures outlined in the CCO and the RFP....."). In other words, "one cannot have a property interest in mere procedures...." *Doe v. Milwaukee County*, 903 F.2d 499, 503 (7th Cir.1990). Accordingly, TTI's position is without merit.[3]

#### b. Substantive Due Process

TTI also believes that its substantive due process rights were infringed. TTI limits this argument to MET's funding decisions for the 1994–95 year involving the "Public Safety Officer", the "Low Voltage Wiring", and the "Medical Billing Specialist" training contracts. TTI argues—in two sentences confined to a footnote—that Director Koenig's decisions regarding those three programs were "so arbitrary as to offend the conscience of the Court."

■ Like a procedural due process claim, however, to state a substantive due process claim one must first have been deprived of a protected life, liberty, or property interest. *Jeffries v. Turkey Run Consol. Sch. Dist.*, 492 F.2d 1, 3–4 (7th Cir.1974) ("The claim that a person is entitled to substantive due process means, as we understand the concept, that state action which deprives him of life, liberty, or property....."); *DeBlasio v.*

*Zoning Bd. of Adjustment*, 53 F.3d 592, 598–601 (3d Cir.1995), *cert. denied,* ____ U.S. ____, 116 S.Ct. 352, 133 L.Ed.2d 247 (1995); *Archuleta v. Colorado Dep't of Institutions*, 936 F.2d 483, 490 (10th Cir.1991). As discussed when analyzing TTI's procedural due process claim, TTI had no protected property interest. *See Local 342, Pub. Serv. Employees v. Town Board of the Town of Huntington*, 31 F.3d 1191, 1196 (2d Cir.1994) ("In view of our conclusion that the Union possessed no protectable property interest in the insurance payments, it would appear obvious that the Town's termination of those payments in no way violated the substantive due process rights of Local 342."). Moreover, TTI makes no argument that Director Koenig's decisions infringed a protected life or liberty interest. Accordingly, since TTI lacks the predicate protected life, liberty, or property interest, its complaint fails to state a viable substantive due process claim.

#### c. Equal Protection

In TTI's final § 1983 claim, TTI argues that Defendants' conduct violated the Equal Protection Clause. Specifically, TTI claims that an Equal Protection Clause violation ensued when MET decided to limit its selection of potential providers regarding the "Medical Billing Specialist" training contract to entities with past experience in the area—excluding of course entities which lacked such experience.[4] Accordingly, TTI argues that it alleged a viable Equal Protection Clause claim—which is not subject to disposition on a motion to dismiss—based on the unconstitutional classification of providers as either those with experience or those without experience in the particular area of expertise.[5]

The Court disagrees.

■ Notably, TTI does *not* claim that it was subjected to unequal treatment regard-

---

3. In fact, due to the abundance of case law on this issue, TTI's argument is bordering on sanctionable.

4. Apparently, at some point in time, MET adopted an informal, unwritten policy that required past experience in "clerical training services" as to the provider of the "Medical Billing Specialist" contract.

5. It does not appear that the instant equal protection violation is even alleged in the complaint. Due to the quality of the complaint, it is difficult to determine. Regardless, because the claim was inadequately pleaded, the Court will analyze it.

ing the "Medical Billing Specialist" training contract due to a racial classification or any other type of classification that would warrant a strict scrutiny analysis. Indeed, both parties agree that the instant equal protection issue involves the rational relationship standard—a far easier standard to satisfy. That is, "the Equal Protection Clause requires only that the classification bear some rational relationship to legitimate governmental ends." *Hager v. City of West Peoria*, 84 F.3d 865, 872 (7th Cir.1996).

When applying the rational relationship standard, the courts are instructed to "presume the constitutionality of the government's classification...." *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir.1992); *accord, Hager*, 84 F.3d at 872. And, the classification will not be held as unconstitutional as long as "any state of facts reasonably may be conceived to justify it." *Wroblewski*, 965 F.2d at 459. In fact, to survive a motion to dismiss, the "plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Id.* at 460.

Here, TTI's complaint is devoid of any allegations as to why the classification of providers into two groups—those with past experience and those without past experience—is not rationally related to a legitimate governmental purpose.[6] Indeed, based on the assertions in TTI's appellate brief, it appears that TTI is operating under the misconception that Defendants are burdened with the task of coming forward with factual allegations or arguments to support the constitutionality of the classification. That, of course, is wrong—as noted, the classification is presumed to be constitutional. Accordingly, TTI's complaint lacks the factual support to overcome the classification's presumption of constitutionality.[7] *See Zajicek v. Aaby*, 77 F.3d 485 (Table), WL 47454, *2 (7th Cir. Feb. 2, 1996) ("[C]omplaints that challenge the rationality of legislation assume a heavy burden; they must overcome the presumption of rationality that attaches to all legislation. *Therefore, complaints like [plaintiffs] must point to some fact that, if proven, would suggest irrationality.*") (emphasis added).

### 2. § 1981 Claim

Generally, § 1981 "addresses racial discrimination in contractual relationships." *Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir.1996). The statute reads in pertinent part:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right to make an enforce contracts ... as is enjoyed by white citizens....

(b) "Make and enforcement contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(a) and (b). One need not belong to a racial minority to bring a § 1981 claim, rather, § 1981 also protects white individuals. *Pollard v. Rea Magnet Wire Co., Inc.*, 824 F.2d 557, 561 (7th Cir.1987) (citing, *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493

---

6. Indeed, as alluded to in footnote 5, *supra*, the Court does not believe that the instant equal protection claim is even pleaded in the complaint. Thus, obviously if the claim is not there, TTI has not satisfied its pleading burden of coming forward with facts to overcome the presumption of constitutionality.

7. In TTI's appellate brief, it claims that it was denied an "equal" opportunity to compete for the "Career Center" contract—which MET issued an RFP for in 1993—because MET did not send it timely notice of the RFP. Although TTI occasionally throws out the word "equal" when discussing the circumstances surrounding the untimely receipt of the RFP, it appears that TTI has developed this issue solely as a procedural due process violation, and not additionally as an equal protection violation. Thus, the Court will not address the equal protection issue. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).").

The Court addressed the procedural due process argument regarding the "Career Center" contract above.

(1976)), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

It appears that TTI's § 1981 claim is limited to the circumstances surrounding its proposal to MET regarding the "Public Safety Officer" training program for the 1992–93 year and the cancellation of its "Low Voltage Wiring" training contract in January of 1993. To review, TTI's "Public Safety Officer" training program proposal received a score of 90, but TTI's funding was cut by 70% for the 1992–93 year. Adept Security, a black-owned company, received a score of 32 for its "Public Safety Officer" training program proposal, yet, its funding increased by 50% for the 1992–93 year. TTI argues that the cutback in funding was racially motivated in violation of § 1981. Additionally, in January of 1993, MET canceled TTI's "Low Voltage Wiring" contract, while no Hispanic or black-owned companies' contracts were canceled. TTI argues that the cancellation of that contract was racially motivated.

■■■ Magistrate Judge Lefkow concluded that the claims were barred by the applicable two-year statute of limitations, *Smith v. City of Chicago Heights,* 951 F.2d 834, 839. (7th Cir.1992) ("[T]he applicable limitations period for actions brought under 42 U.S.C. § 1981 ... in federal court in Illinois is Illinois' two-year statute of limitations for personal injury actions."), and, alternatively, by the settlement agreement entered into between the parties. Assuming the circumstances surrounding TTI's reduced funding for the 1992–93 year and the cancellation of the contract in January of 1993 qualify as actionable conduct under § 1981, the Court agrees that the actions are barred by the limitations period.[8]

The complaint was filed on August 30, 1995. Thus, if the two-year statute of limitations began to run prior to August 30, 1993, TTI is in trouble. TTI learned in July of 1992 that its funding regarding the "Public Safety Officer" training program for the 1992–93 year was cut while a black-owned entity's funding was increased. TTI learned in January of 1993 that its "Low Voltage Wiring" contract had been canceled, but no Hispanic or black-owned companies' contracts were canceled. Therefore, on the facts in the complaint, it appears that the § 1981 actions accrued and thus the two-year statute of limitations began to run in July of 1992 and January of 1993, respectively. *See Moskowitz v. Trustees of Purdue Univ.,* 5 F.3d 279, 281 (7th Cir.1993) (The "cause of action has accrued and the statute of limitations begins to run" when the plaintiff knows, or through the exercise of due diligence, should have known that he has been injured.). Accordingly, since the complaint was filed in August of 1995, TTI's § 1981 actions are untimely.

TTI does not dispute that the two independent § 1981 claims appear to fall outside the limitations period. TTI attempts to avoid that conclusion by first relying on the "discovery rule," which would postpone the beginning of the limitations period from the date when the plaintiff is wronged—here, July of 1992 and January of 1993, respectively—to the date when he discovers that he has been injured.[9] *See Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1990), *cert. denied,* 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). TTI argues that "the evidence will show that it discovered the basis for the [§ 1981 claims] within two years of commencing the instant action." However, in its complaint, TTI does not plead any facts—in violation of FED.R.CIV.P. 9(f)[10]—to

---

**8.** The Court makes no ruling as to whether the settlement agreement also bars the claims.

**9.** The Court notes that TTI did not make this argument in its appellate brief. Rather, it was made to Magistrate Judge Lefkow. In its appellate brief, TTI states that it is adopting its brief before Magistrate Judge Lefkow so it need not repeat its argument here. Adopting arguments made below is not a proper basis to proceed on appeal. Arguably, by failing to brief the argument on appeal, TTI has waived the issue. *See Berkowitz,* 927 F.2d at 1384 ("We repeatedly

have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."). Regardless, the Court will address it.

**10.** Rule 9(f) states:

For the purposes of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter.

support its position that it "discovered" the racial discrimination injuries within the two-year period beginning on August 30, 1993, and ending on August 30, 1995. In fact, in its memorandum to Magistrate Judge Lefkow, TTI admitted that the complaint "makes no allegations as to when [it] discovered the discriminatory conduct." The Seventh Circuit noted over 40 years ago that such a complaint cannot survive a motion to dismiss.[11] *Kincheloe v. Farmer,* 214 F.2d 604, 605 (7th Cir.1954) ("Plaintiff by the allegations of his complaint erected the limitation bar and it was his duty in order to extricate himself therefrom to plead any exceptions upon which he relied."), *cert. denied,* 348 U.S. 920, 75 S.Ct. 306, 99 L.Ed. 721 (1955); *accord, LRL Properties v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1107 n. 6 (6th Cir.1995); *Griggs v. Robinson Sec.,* No. 84–C–4679, 1985 WL 1163 *5 (N.D.Ill. May 9, 1985) ("[I]t is the plaintiff's duty to affirmatively and particularly plead the date of discovery or face dismissal."); *In re Josefik,* 72 B.R. 393, 401–02 (Bkrtcy.N.D.Ill.1987) ("Plaintiffs who seek to rely on the discovery rule have an affirmative duty to plead the date of discovery, as a material averment under FED.R.CIV.P. 9(b) or (f), or face dismissal of the complaint.").

■ Second, TTI offers a one-sentence argument that the "equitable tolling" doctrine may apply to toll the applicable statute of limitations. The equitable tolling doctrine "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada,* 920 F.2d at 451. Importantly, the equitable tolling doctrine presumes that the plaintiff knows of the injury. *Smith,* 951 F.2d at 839. The Court has a few problems with TTI's reliance on the equitable tolling doctrine. As noted above, TTI argued before Magistrate Judge Lefkow that it discovered the racial discriminatory injury within the two year

period preceding the filing of the complaint. If that is true, then why does TTI need to toll the two-year statute of limitations? Regardless, TTI has not plead any facts which would support the application of the equitable tolling doctrine—specifically, it has not plead that despite the exercise of due diligence it could not obtain the vital information within the limitations period. *Kincheloe,* 214 F.2d at 605 (It is plaintiff's duty to plead any exception to the statute of limitation bar). Nor, has TTI developed any type of argument as to how the equitable tolling doctrine could be applicable here. *See Berkowitz,* 927 F.2d at 1384.

■ Finally, TTI proffers an additional one-sentence argument that the "equitable estoppel" and "fraudulent concealment" doctrines may apply. The equitable estoppel doctrine comes into play "if the defendant takes active steps to prevent the plaintiff from suing in time." *Cada,* 920 F.2d at 450. Generally speaking, the equitable estoppel doctrine has two aspects to it; one aspect overlaps with the discovery rule doctrine, *see id.* at 451, the other overlaps with the fraudulent concealment doctrine, *see Wolin v. Smith Barney Inc.,* 83 F.3d 847, 855 (7th Cir.1996); *Theriot v. Captain James Sprinkle, Inc.,* 30 F.3d 136 (Table), 1994 WL 287392 *3 (7th Cir. June 28, 1994) ("[F]raud is a subset of equitable estoppel.").

■ Although unclear, it appears that TTI argues that the settlement agreement signed by TTI on August 19, 1993, and by the City of Chicago on May 19, 1993—which required TTI to forego any claims against MET regarding the circumstances surrounding the two potential § 1981 actions at issue in exchange for a "Low Voltage Wiring" contract valued at $113,000—supports its equitable estoppel argument. TTI argues that it was "forced" to sign the settlement because MET is the only consumer of "Low Voltage Wiring" contracts in the Chicago area.[12]

---

11. Interestingly, Magistrate Judge Lefkow gave TTI the option to amend its complaint to correct the numerous pleading errors. TTI, however, chose not to do that, but instead, appealed to this Court. Not a good move.

12. Apparently, TTI argues that it was forced to sign due to economic duress. To establish du-

ress in Illinois, the threat or pressure by the defendant "must have left the individual bereft of the quality of mind essential to the making of the contract." *Resolution Trust Corp. v. Ruggiero,* 977 F.2d 309, 313 (7th Cir.1992) (quoting, *Alexander v. Standard Oil Co.,* 97 Ill.App.3d 809, 53 Ill.Dec. 194, 198, 423 N.E.2d 578, 582 (1981)).

TTI argues that MET "forced" it to sign the agreement to cover-up the potential § 1981 claims.

■ As noted previously, there are two aspects to the equitable estoppel doctrine. The first aspect—which is in the domain of the discovery rule doctrine—applies when the defendant takes active steps to prevent the plaintiff from discovering the injury. *See Cada*, 920 F.2d at 451. If TTI is relying on that aspect of equitable estoppel, it has failed to plead the date of discovery of the racial discriminatory injury. Thus, the complaint is deficient.

The second aspect—which overlaps with the fraudulent concealment doctrine—presupposes that the plaintiff has discovered the injury and denotes fraudulent efforts by the defendant to prevent the plaintiff from suing in time. *Id.* Once again, though, the complaint fails to plead the date of discovery and, also, it fails to identify any fraudulent conduct on the part of defendants which mislead TTI.[13] *See Theriot*, 1994 WL 287392 *3 (The plaintiff "does not allege that the defendants supplied him (intentionally or otherwise) with false or misleading information.").

### 3. *Constitutionality of the M/WBEP Program*

Finally, TTI challenges the constitutionality of the City's M/WBEP Program. TTI does not seek damages regarding its attack on the M/WBEP Program, rather, it seeks declaratory and injunctive relief. The M/WBEP Program requires the City to set aside a specified percentage of contracts to local businesses which are majority owned by minorities, including women. Magistrate Judge Lefkow concluded that TTI lacked standing to challenge the constitutionality of the City's M/WBEP Program, thus, she dismissed the claim for lack of jurisdiction.

The Court agrees.

TTI does not plead that it was pressured or threatened by Defendants to sign the settlement agreement. Nor does TTI plead or state why the fact that MET is the only consumer of "Low Voltage Wiring" contracts in the Chicago area compelled it to enter into the agreement.

■ "Article III of the Constitution limits the judicial power of the United States to the resolution of 'cases' and 'controversies.'" *Doe v. County of Montgomery*, Ill., 41 F.3d 1156, 1158 (7th Cir.1994). "The doctrine of standing 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Id.* at 1159 (citing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)). To establish standing and thus invoke the jurisdiction of the federal courts, one must demonstrate three things: (1) an "injury in fact," *i.e.*, an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Northeastern Florida Contractors v. City of Jacksonville*, 508 U.S. 656, 661–65, 113 S.Ct. 2297, 2301–02, 124 L.Ed.2d 586 (1993).

■ As a plaintiff who seeks injunctive or declaratory relief, TTI must generally show a sufficient possibility of future harm in order to have standing to challenge the constitutionality of the M/WBEP Program. *See Adarand Constructors, Inc. v. Pena*, —— U.S. ——, ——, 115 S.Ct. 2097, 2104, 132 L.Ed.2d 158 (1995). It appears to the Court that TTI cannot establish an "injury in fact"—requirement number one. Indeed, TTI's injury is not "actual or imminent," rather, it is more in the nature of hypothetical or conjectural.

True, TTI's complaint alleges that it bid on contracts in the past and intends to bid on contracts in the future. But, TTI's complaint does not paint the complete picture. What the complaint omits is that not all of the contracts offered by the City are subject to the provisions of the M/WBEP Program. In fact, the M/WBEP Program does not even apply to JTPA contracts.[14] Significantly,

13. Keep in mind, pursuant to Fed.R.Civ.P. 9(b), fraud must be plead with particularity.

14. JTPA contracts are technically called "delegate agency contracts."

TTI *never* bid on a contract which was governed by the M/WBEP Program.[15] Indeed, TTI bid on *only* JTPA contracts.

■ Before addressing the significance of those facts, however, the Court must address a procedural matter. The *unchallenged* facts listed in the preceding paragraph were supported by affidavits attached to Defendants' response to TTI's motion for preliminary injunction. Defendants' motion to dismiss and TTI's motion for preliminary injunction were apparently considered simultaneously by Magistrate Judge Lefkow. Because the court's jurisdiction was at issue, Magistrate Judge Lefkow was not limited to the allegations in the complaint when deciding whether to dismiss the claim under FED.R.CIV.P. 12(b)(1) for lack of subject matter jurisdiction. Rather, the court properly considered matters outside the complaint to aid in the determination as to whether TTI had standing to attack the constitutionality of the M/WBEP Program. *Roman v. U.S. Postal Serv.*, 821 F.2d 382, 385 (7th Cir.1987) ("It is proper for the district court to look beyond the jurisdictional allegations in the complaint and to view whatever evidence has been submitted in determining whether subject matter jurisdiction exists under Rule 12(b)(1)."); *Schaefer v. Transp. Media, Inc.*, 859 F.2d 1251, 1253 (7th Cir.1988). Thus, any suggestion by TTI that Magistrate Judge Lefkow was limited to the allegations in the complaint when analyzing the standing issue is incorrect.

Now, to the significance of those facts. In *Adarand*, when determining whether the plaintiff could show that his prospective injury was "imminent"—a component of the "injury in fact" requirement—the Supreme Court concentrated its analysis on whether *Adarand* "made an adequate showing that sometime in the relatively near future it" would bid on another government construction contract subject to the program. *Id.* at ——, 115 S.Ct. at 2105. The Court concluded that such a showing was made because: (1) the evidence established that *Adarand* bid on such contracts in the past—in fact, *Adarand* bid on *every* guardrail construction project in its home state of Colorado, *id.* at ——, 115 S.Ct. at 2105; (2) statistical evidence established that Colorado offers on average one and one half guardrail contracts per year and nothing suggested that the frequency of such offers would cease in the future, *id.;* and (3) the evidence established that *Adarand* must compete for such contracts against minority owned companies who received preferential treatment as a result of the program, *id.*

In contrast to *Adarand,* here: (1) TTI has never bid on a contract subject to the M/WBEP Program in the past; (2) there is no evidence that TTI will ever bid on such a contract in the future—TTI has not identified any such contract before Magistrate Judge Lefkow or this Court; and (3) there is no evidence that TTI ever competed with a minority owned company that received preferential treatment during the bidding process.

■ It is this Court's opinion that because TTI has no *past history* of bidding on contracts governed by the M/WBEP Program, to establish the likely occurrence of a future injury, TTI was required, at a minimum, to plead or submit evidence that it is in a position to bid on a particular future contract governed by the M/WBEP Program, *i.e.,* it was required to specifically identify such a contract.[16] *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 564, 112 S.Ct. 2130, 2138, 119 L.Ed.2d 351 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not sup-

---

15. Although TTI does not raise the argument on appeal, before Magistrate Judge Lefkow, it attempted to create a factual dispute as to whether the M/WBEP Program *could* apply to JTPA contracts by playing semantical games with the regulatory language governing the M/WBEP Program. Whether the M/WBEP Program technically *could* apply to the JTPA contracts is not the issue. Whether it *could* apply does not change the unchallenged fact that the City has

never applied the M/WBEP Program provisions to the JTPA contracts. And, there is no indication or argument that the City will ever change that practice.

16. Of course, if TTI does submit a bid on a contract which is governed by the M/WBEP Program, it may bring an action challenging the program in the future.

**754**

port a finding of the 'actual or imminent' injury that our cases require."); *Bras v. California Pub. Util. Comm'n,* 59 F.3d 869, 876–78 (9th Cir.1995) (Pregerson, J., dissenting), *cert. denied,* —— U.S. ——, 116 S.Ct. 800, 133 L.Ed.2d 748 (1996). Indeed, the absence of a past history of bidding on such contracts means that TTI has never been "injured" by the set aside program. Since TTI has never been injured in the past, the potential for a future injury—absent the specific identification of a contract—is far too speculative and uncertain to establish standing.

In support of its position, TTI relies exclusively on the Supreme Court's decision in *Northeastern.* Keep in mind, however, in contrast to TTI, the plaintiff in *Northeastern,* like the plaintiff in *Adarand,* had a *history* of *regularly* bidding on contracts subject to the minority set-aside program at issue. *Northeastern,* 508 U.S. at 668, 113 S.Ct. at 2304 ("In its complaint petitioner alleged that its members regularly bid on construction contracts in Jacksonville, and that they would have bid on contracts set aside pursuant to the City's ordinance were they so able."); *see Bras,* 59 F.3d at 876 (Pregerson, J., dissenting). Once again, though, here, such a past history—which adds much strength to a plaintiff's allegation that a similar future injury is actual and imminent—is missing.

### III. *CONCLUSION*

For the reasons discussed above, the Court finds that TTI's § 1983 claims, § 1981 claims, and attack on the constitutionality of the City's minority set-aside program are without merit. Magistrate Judge Lefkow's decision is affirmed.