**SOUTHWEST FINANCIAL BANK AND TRUST COMPANY, Plaintiff/Appellee/Cross–Appellant,**

v.

**The GEORGE HYMAN CONSTRUCTION COMPANY, et al., Defendants/Appellants/Cross–Appellees.**

**No. 95 C 2887.**

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 16, 1996.

---

John S. Carroll, C. Richard Farmer, Carol Sharpe McMahan, Carroll, Hartigan & McCauley, Ltd., Chicago, IL, for plaintiff.

John S. Mrowiec, Eric Arthur Berg, Stein, Ray & Conway, Chicago, IL, David L Cole, Jr., John Anthony Wolf, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for defendants.

## *MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

This matter is before the Court on appeal, pursuant to Federal Rule of Civil Procedure 73(d) and 74, from a judgment entered by United States Magistrate Judge Edward Bobrick granting in part and denying in part Defendants/Appellants/Cross–Appellees' motion for summary judgment and granting in part and denying in part Plaintiff/Appellee/Cross–Appellant's motion for summary judgment. For the reasons discussed below, Magistrate Judge Bobrick's decision is affirmed in part and reversed and remanded in part.

### I. Background

#### A. Facts

Defendant/Appellant/Cross–Appellee The George Hyman Construction Company ("Hyman") performs as a general contractor on construction projects. In 1988, Hyman, as general contractor, contracted with Ramco Industries Inc. ("Ramco") for the fabrication and erection of miscellaneous metal structures for the construction of the Los Angeles State Office Building (the "State Office Building" contract). Pursuant to the State Office Building contract, Hyman was entitled

to withhold sums due Ramco to cover liabilities Hyman may incur if Ramco failed to pay its own subcontractors regarding the instant contract or any other agreement between the parties. Of course, if Hyman was required to pay Ramco's subcontractors, Ramco would be indebted to Hyman for that amount.

Towards the end of 1989, two of Ramco's subcontractors, claiming nonpayment by Ramco, served payment bonds on Hyman. In early 1990, the two Ramco subcontractors filed suit naming Ramco, Hyman, and others as defendants (the "Ramco litigation"). The jury returned a verdict against all defendants in the amount of $371,883.13. Pursuant to the State Office Building contract, Hyman withheld, and continues to withhold, $100,000 due and owing to Ramco to protect itself from exposure in the Ramco litigation.

In 1990, Hyman and Defendant/Appellant/Cross–Appellee M.A. Mortenson Company ("Mortenson"), also a general contractor on construction projects, formed a joint venture known as Hyman/Mortenson. Despite Hyman's problems with Ramco, in April 1990, Hyman/Mortenson, as general contractor, subcontracted with Ramco for fabrication and erection of metal structures for the construction of the Los Angeles Convention Center expansion (the "Convention Center" contract). The Convention Center contract was similar to the State Office Building contract in that it permitted Hyman/Mortenson to withhold amounts due Ramco in the event Hyman/Mortenson incurred liability for which Ramco was responsible regarding the instant contract or any other agreement between the parties. Hyman/Mortenson is withholding $220,580 due and owing to Ramco under the Convention Center contract to protect Hyman from exposure in the Ramco litigation.

From April 1990 to April 1993, Ramco was indebted over $1,000,000 to Plaintiff/Appellee/Cross–Appellant Southwest Financial Bank and Trust Company ("Southwest") pursuant to several promissory notes. The indebtedness was secured by various items of collateral, including Ramco's accounts receivables—Southwest filed the appropriate Uniform Commercial Code (UCC) financing

statements with the Illinois Secretary of State.

In the meantime, Ramco declined to pay the $371,883 jury verdict from the Ramco litigation, but instead desired to appeal. Ramco, however, was financially incapable of posting a supersedeas bond in the statutory required amount of 150% of judgment pending the appeal. So, Ramco asked Hyman to post the supersedeas bond on Ramco's behalf. Hyman agreed. The only documentary evidence memorializing the agreement (the "appeal bond agreement") is a letter from Ramco to Hyman dated February 5, 1993. The letter reads, in pertinent part, as follows:

I am writing to confirm our agreement regarding posting of an appeal bond for all defendants in the above-referenced matters. In return for the George Hyman Construction Company ("Hyman") posting the appeal bond, Ramco Industries, Inc. ("Ramco") agrees:

3. Hyman shall have the right to withhold amounts due to Ramco under any agreement between Ramco and Hyman, The George Hyman Construction Company and M.A. Mortenson Company, A Joint Venture or the George Hyman Construction Company & Power Contracting and Engineering Corp., A Joint Venture to cover Hyman's reasonable estimate of any costs or liability Hyman has incurred or may incur for which Ramco may be responsible.

Thereafter, Ramco sought arbitration of payments due from Hyman/Mortenson regarding the Convention Center contract. In April 1995, the arbitration panel awarded against Hyman/Mortenson and in favor of Ramco in the amount of $617,000. Hyman/Mortenson is withholding $277,946.99 of the award to protect Hyman from exposure in the Ramco litigation.

Just prior to the arbitration award, in January 1995, Ramco's promissory note with Southwest matured. Ramco failed to pay and a default occurred. In February 1995, Southwest informed Hyman and Hyman/Mortenson of its security interest—neither Hyman nor Hyman/Mortenson were on

notice of the security interest prior to this time. Southwest demanded that the arbitration award be made payable to Ramco and Southwest jointly. About a week later, Southwest filed a continuation of its UCC financing statement.

Hyman's exposure in the Ramco litigation was $585,352. Additionally, both Hyman and Hyman/Mortenson were each subjected to garnishments of $13,105. To review, to protect Hyman from exposure in the Ramco litigation: Hyman withheld $100,000 due and owing Ramco on the State Office Building contract; Hyman/Mortenson withheld $220,580 due and owing Ramco on the Convention Center contract; and Hyman/Mortenson withheld $277,946.99 from the arbitration award.

### B. Proceedings Before Magistrate Judge Bobrick

Southwest filed a complaint against Hyman, Mortenson, and Hyman/Mortenson (the "defendants") alleging conversion of its perfected security interest in Ramco's accounts receivables. Specifically, because Ramco was entitled to the funds withheld by Hyman ($100,000) and Hyman/Mortenson ($498,526.99) for the work it performed regarding the two contracts, Southwest argued that the funds qualified as accounts receivables and thus, due to its perfected security interest, it was entitled to the funds. Southwest also sought punitive damages.

Both parties filed motions for summary judgment—their primary arguments are summarized as follows:

Southwest conceded that it could not recover the funds ($100,000) withheld from Ramco by Hyman pursuant to the State Of-

fice Building contract and UCC § 9–318(1)(a).[1] Regarding the funds ($498,526.99) withheld by Hyman/Mortenson, Southwest argued that no provision of the Convention Center contract permitted the withholding since the funds were being withheld to set-off debts Ramco owed to Hyman, not Hyman/Mortenson. Further, Southwest asserted that the appeal bond agreement could not have authorized the withholding because the agreement was between Ramco and Hyman, not Hyman/Mortenson. Finally, Southwest argued that it should be permitted to present evidence as to the appropriateness of punitive damages after the court ruled on the underlying conversion claim.

The defendants argued that the appeal bond agreement was essentially a good faith and commercially reasonable modification of the Convention Center contract with Hyman/Mortenson. Specifically, the defendants contended that the appeal bond agreement expanded Hyman/Mortenson's already existing contractual set-off rights by essentially allowing it and Hyman to aggregate their debts to Ramco and set-off such debts with Ramco's debt to Hyman on the appeal bond. As a modification, the defendants argued that UCC § 9–318(2)[2] controlled and thus permitted Hyman/Mortenson's conduct in accordance with the spirit of the appeal bond agreement. Finally, the defendants claim that no evidence supported the imposition of punitive damages.

For the most part, Magistrate Judge Bobrick agreed with Southwest's position regarding the conversion claim. Focusing on the plain-language of the appeal bond agreement, Magistrate Judge Bobrick concluded that the agreement was between Hyman and Ramco; Hyman/Mortenson was not a party

1. Section 9–318(1) or 810 ILCS 5/9–318(1)(a) provides:

 (1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in § 9–206 the rights of an assignee [Southwest] are subject to

 (a) all the terms of the contract between the account debtor [Hyman] and assignor [Ramco] and any defense or claim arising therefrom.

2. Section 9–318(2) or 810 ILCS 5/9–318(2) provides:

 So far as the right to payment or a part thereof under an assigned contract has not been fully earned by performance, and notwithstanding notification of the assignment, any modification of or substitution for the contract made in good faith and in accordance with reasonable commercial standards is effective against an assignee [Southwest] unless the account debtor [Hyman/Mortenson] has otherwise agreed but the assignee [Southwest] acquires corresponding rights under the modified or substituted contract. The assignment may provide that such modification or substitution is a breach by the assignor.

to it. Since Hyman/Mortenson was not a party to the appeal bond agreement, Magistrate Judge Bobrick concluded that the agreement could not have modified the Convention Center contract (between Hyman/Mortenson and Ramco) by granting Hyman/Mortenson an expanded set-off right.

Magistrate Judge Bobrick determined that the appeal bond agreement's reference to Hyman/Mortenson was for the purpose of assigning some unknown interest to either Hyman or Hyman/Mortenson. Because the assignment occurred after Southwest perfected its security interest, Magistrate Judge Bobrick concluded that whatever interest was assigned was inferior to Southwest's interest. Accordingly, Southwest's motion for summary judgment was granted and the defendants' motion for summary judgment was denied regarding the conversion claim.

Because Southwest failed to come forward with evidence in support of its punitive damages claim, but instead argued that the issue should be reserved for trial, Magistrate Judge Bobrick granted the defendants' motion for summary judgment on this issue.

## II. Discussion

Both parties appeal Magistrate Judge Bobrick's decision: Hyman, Mortenson, and Hyman/Mortenson dispute Magistrate Judge Bobrick's analysis of Southwest's conversion claim—which involves an interpretation of the appeal bond agreement; Southwest contends that it was improper to dismiss its claim for punitive damages.

When reviewing Magistrate Bobrick's decision, this Court will be acting as an appellate court. *The Training Institute, Inc. v. City of Chicago,* 937 F.Supp. 743, 746 (N.D.Ill.1996). Thus, because this matter was decided on summary judgment, the Court will review this matter *de novo. Campbell v. Chappelow,* 95 F.3d 576, 579 (7th Cir.1996).

As discussed below, following a statement of the summary judgment standard of review, the Court agrees with Magistrate Judge Bobrick's analysis of the punitive damages issue, but concludes that this matter should be remanded for further development regarding the intentions behind Ramco and Hyman's appeal bond agreement.

## A. Motion for Summary Judgment—Legal Standard

Under Fed.R.Civ.P. 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Black v. Henry Pratt Co.,* 778 F.2d 1278, 1281 (7th Cir.1985). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist,* 833 F.2d 639 (7th Cir.1987).

## B. Magistrate Judge Bobrick's Decision

### 1. The Conversion Claim

As noted, Magistrate Judge Bobrick granted summary judgment in favor of Southwest on its conversion claim, concluding that Hyman/Mortenson was not entitled to set-off the $220,580 owed to Ramco on the Convention Center contract and the $277,946.99 owed to Ramco from the arbitration proceedings with Ramco's debt to Hyman on the appeal bond agreement. The decision was premised on a plain-language interpretation of the February 1993 appeal bond agreement. As explained below, the Court, however, does not believe that the plain-language of the agreement is sufficient to decipher the parties' intentions.

■ Of course, as alluded to above, the primary objective in construing an agreement is to give effect to the parties' intent. *Home Ins. Co. v. Chicago & Northwestern Transp. Co.*, 56 F.3d 763, 767 (7th Cir.1995). Generally speaking, if the language of the agreement is ambiguous or incomplete, the court should consider extrinsic evidence to determine the parties' intent. *Id.*

Here, the appeal bond agreement is unclear or incomplete and thus, intrinsically ambiguous. *Id.* at 768. The letter does state that it is an agreement between Hyman and Ramco. But, if Hyman and Ramco were the only parties to this agreement, how could paragraph three of the agreement grant Hyman the right to withhold amounts due to Ramco under any agreement between Ramco and Hyman/Mortenson? There is something more going on here. Clearly, Hyman/Mortenson, was, in some manner, a part of this agreement.[3]

Magistrate Judge Bobrick concluded that the appeal bond agreement's reference to Hyman/Mortenson evidenced an assignment of some interest to Hyman or Hyman/Mortenson. The Court respectfully disagrees with that conclusion. The plain-language of the appeal bond agreement cannot be read to support any form of an assignment.

Unfortunately, the Court does not believe that there is enough extrinsic evidence in the record for it to ascertain the parties' intent.

See *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 457 (7th Cir.1991). There is an affidavit from Ramco's president where he attests to his belief that the appeal bond agreement was between Hyman and Ramco, not Hyman/Mortenson. But, once again, if that was the parties' understanding, how could the appeal bond agreement allow Hyman to withhold amounts due to Ramco under any agreement between Ramco and Hyman/Mortenson? There is also an affidavit from Mortenson's project manager. But, as noted by Magistrate Judge Bobrick, the affidavit adds virtually nothing to the analysis, it merely restates Hyman/Mortenson's position regarding the interpretation of the appeal bond agreement.[4]

Accordingly, the Court remands this matter for the parties to submit extrinsic evidence in support of their respective interpretations of the appeal bond agreement—the extrinsic evidence in the appellate record is simply inadequate to conclusively determine the effect of the agreement.[5] *See id.* ("[T]here may well be extrinsic evidence outside the record on appeal that bears upon the proper determination of the parties' intent."). The findings of fact made by Magistrate Judge Bobrick regarding the extrinsic evidence will determine the next step in this matter. For instance, if the parties did in fact intend the agreement to be a modification of the Convention Center contract, does UCC § 9–318(2) even apply? Or, was the

**3.** Southwest does not dispute that Hyman, as a joint venturer, had the authority to act on behalf of Hyman/Mortenson. *See Coleman v. Charlesworth*, 240 Ill.App.3d 662, 181 Ill.Dec. 391, 394, 608 N.E.2d 464, 467 (1st Dist.1992) ("[E]ach joint venturer is considered an agent of the joint venture for the purpose of carrying on its usual course of business.").

**4.** There is also a transcript of Ramco's president before the arbitration panel and a written statement from Ramco in which Ramco acknowledged that Hyman/Mortenson was withholding funds. Hyman/Mortenson claims that such evidence supports its assertion that Ramco conceded that Hyman/Mortenson could withhold funds pursuant to the appeal bond agreement. The Court finds that the evidence is incomplete and unclear.

The transcript acknowledges that Hyman/Mortenson is withholding funds, but it does not concede that it has the right to withhold those funds pursuant to the appeal bond agreement.

The written statement from Ramco notes that Hyman/Mortenson is withholding sums for security for a claim filed by a Ramco subcontractor on the State Office Building contract pursuant to a prior agreement between the parties. First, Hyman/Mortenson was not involved in the State Office Building contract. Second, it does not state which prior agreement between the parties is involved.

**5.** The Court understands that it is essentially giving the parties a second bite at the apple. But, the Court has no other option. As noted, the appeal bond agreement is unclear or incomplete; thus, the Court cannot determine the parties' intent. And, the extrinsic evidence in the appellate record adds nothing to either parties' position. Thus, the Court must remand this to allow the parties to submit "better" extrinsic evidence in support of their respective positions.

agreement intended to be a separate three party contract between Hyman, Hyman/Mortenson, and Ramco? If so, does Southwest's security interest take priority over Hyman/Mortenson's rights under the separate contract—particularly, since Hyman/Mortenson was not on notice of Southwest's security interest at the time of the appeal bond agreement? [6]

### 2. Punitive Damages

 Magistrate Judge Bobrick concluded that Southwest's claim for punitive damages failed since it neglected to come forward with supporting evidence, but instead, argued that the issue should be reserved for trial. The purpose of summary judgment is to determine if there are genuine issues of material fact in dispute that can be resolved only by resorting to a trial. Of course, to determine if genuine material factual disputes exist, one must present his evidence in support of his position. Southwest failed to present *any* evidence in support of its punitive damages claim. Accordingly, summary judgment was properly granted against it.

### III. Conclusion

The Court affirms Magistrate Judge Bobrick's decision regarding punitive damages, but reverses and remands with respect to Southwest's conversion claim which, as noted, involves an interpretation of the appeal bond agreement. Extrinsic evidence must be considered to determine the parties' intent for entering into the agreement.

---

**6.** The Court is not limiting the remand to these issues, there may be many others depending on the factual findings by Magistrate Judge Bobrick.